UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
NICOLE PERKINS,                                             :
                                                            :    **MEMORANDUM DECISION**
                            Plaintiff,                      :    **AND ORDER**
                                                            :
              - against -                                   :    21-cv-3887 (BMC)
                                                            :
CITY OF NEW YORK,                                           :
                                                            :
                            Defendant.                      :
                                                            :
                                                            :
----------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff seeks damages and injunctive relief against her employer, the City of New York's Human Resources Administration ("HRA"), for alleged violations of her right to reasonable accommodations under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, as well as under state and city laws. Before this Court is defendant's motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The amended complaint does nothing more than describe an iterative process by which HRA made ongoing, reasonable efforts to accommodate plaintiff, some of which were at least temporarily successful, subject to conditions imposed by the pandemic and the balancing of available technology against the sometimes competing concerns of technological security. For that reason, it does not cross the line from "possible" to "plausible." Defendant's motion is therefore granted.

## SUMMARY OF COMPLAINT

Plaintiff is a deaf individual employed as a case manager by the HRA since July 22, 2019. As she communicates primarily in American Sign Language due to her hearing disability, she requires certain accommodations to perform the essential functions of her job.

On August 15, 2019, approximately a month after she began working for defendant, plaintiff officially made a request for a reasonable accommodation.[1] She requested a monitor or computer with a video camera to be used as a videophone ("videophone"), as well as access to video remote interpreting ("VRI") through her phone or a tablet for her field visits.[2]

Plaintiff received the videophone she had requested on October 11, 2019, less than two months after requesting it. The videophone was installed by Sorenson, a company specializing in interpreting services for the deaf and hard of hearing, under a contract entered into with the City.

Plaintiff alleges that from the get-go, she encountered numerous issues with her videophone. Indeed, immediately after installation, technical difficulties rendered it inoperable. The videophone's inoperability appeared to be caused by defendant's network security system, particularly its firewall. These issues could be resolved, at least temporarily, through the installation of a wireless router device (a "cradle point") that would bypass the firewall. Defendant did not immediately fix her videophone after installation, although it is unclear if it was alerted to the existence of a problem. In any event, plaintiff alleges that defendant should have been aware that it needed to install a cradle point, and that it should have done so

---

[1] In her Amended Complaint, plaintiff states that she made an earlier request for reasonable accommodations unofficially in June 2019. However, as noted above, plaintiff did not begin employment with HRA until over a month later, in late July 2019.

[2] VRI is "an interpreting service that uses video conference technology over dedicated lines or wireless technology offering high-speed, wide-bandwidth video connection that delivers high-quality video images." 28 C.F.R. § 36.104.

automatically, because its technical teams had installed both a videophone and a cradle point for another deaf employee at some point in the past.

Thereafter, plaintiff requested that the City's Office of Disability Affairs investigate the matter on October 22, 2019. Later that day, Elizabeth Iannone, a director in that office, informed plaintiff that she had reached out to the technical team at HRA. Iannone also informed plaintiff that "the reason that it's taking so long is that the cradle point they used before to bypass the firewall is only a temporary solution. They are trying to come up with a permanent solution so that this would never be a problem again." Iannone proceeded to exchange numerous e-mails with Susheel Balachandran, a director at HRA specializing in voice technologies, regarding the videophone issues, and discussed installing the cradle point as a temporary solution.

The issue was not immediately resolved. On November 25, 2019, plaintiff followed up with several staff members at defendant, including a warning that she was contemplating filing a complaint. Shortly thereafter, on November 29, 2019, defendant installed a cradle point for plaintiff's videophone.

Plaintiff acknowledges that the cradle point resolved her issues with her videophone for a period. However, she alleges that eventually the internet speeds for the cradle point impeded her ability to use the videophone "at all." Plaintiff requested that defendant move her cradle point to see if this would improve speeds. When defendant complied with her request, the cradle point stopped functioning entirely on January 8, 2020.

On February 4, 2020, defendant or Sorenson installed a replacement cradle point, and plaintiff was able to make calls using her videophone. However, she contends that some technical issues still existed, as she was unable to view her call history or access her voicemail

box. When she complained to defendant about these issues, she was told to contact Sorenson for technical support.

Less than 10 days later, on February 13, 2020, a technician from Sorenson came to fix her videophone to allow her to access to her call history and voicemail box. This repair appeared to be successful. The Sorenson representative opined during the visit that he believed HRA's firewall was preventing the videophone from "fully functioning." Several unsuccessful attempts were made to troubleshoot over the next few weeks by plaintiff, Sorenson, and different HRA departments.

On March 13, 2020, plaintiff reported new issues to Sorenson, namely that the video quality for her videophone had begun worsening again. On the same day, Sorenson discussed the issue with defendant. Defendant explained that the internet speed may become slow when "the cellular traffic is high at any given time in that region, [because] the bandwidth gets affected." Defendant clarified that there was no throttling of speed from its end, and that other solutions, like a dedicated line, would not work because the City's enterprise security policy prohibited it, and that, indeed, even the cradle point was not compliant with the security policy. Defendant explained that "[w]e have asked our CISO's ["Chief Information Security Officer"] office for advice."

Plaintiff responded that she believed that the issue was actually that "the quality of speed for the [videophone], like cellular phones, declines drastically once the data limit is reached." She did and does believe that this limit is 20 gigabits, after which throttling of her cradle point's connection would occur. Further, she explained that "for the last 3 days I have had complaint [sic] from interpreters that they were having difficulty seeing me because it was freezing and blurry. I shouldn't need to have interpreters to tell me to sign very slow to see me clearly."

4

Plaintiff and Sorenson had some limited further back and forth that year about her issues with the videophone. On April 20, 2020, Sorenson sent plaintiff an e-mail inquiring about the videophone as the company had not heard back from defendant since March 2020. Plaintiff responded that "sometimes the qualities are slow, sometimes the qualities are good" but that it was difficult to keep track of the issue because she had been working from home. Sorenson also attempted to follow-up twice with defendant in April 2020, but it did not receive a response.

Neither plaintiff nor Sorenson raised any issues concerning the videophone again until March 12, 2021. At that time, plaintiff checked back in with Sorenson to ask whether the company had heard from defendant since it had last inquired about the issues nearly a year prior. Sorenson confirmed that it had not. No further communication ensued on the issue.

On September 13, 2021, plaintiff went back to the office full-time and therefore began to use her videophone again. Upon her return, she acknowledges that her videophone was working properly. However, plaintiff alleges that other people had reported that their videophone screen freezes from time to time while they were speaking to her via videophone. She alleges that this is because, as she learned from Sorenson, her videophone's download speed and upload speeds are insufficient to function "without any freeze."

## DISCUSSION

**I.**     **Standard of Review**

In deciding a motion to dismiss under Federal Rules of Civil Procedure rule 12(b)(6), the Court must "constru[e] the complaint liberally, accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of New York Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v.

5

Twombly, 550 U.S. 544, 570 (2007), and to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

II. **Plaintiff's Failure to Accommodate Claims Under the Rehabilitation Act**

The Rehabilitation Act provides that no individual shall be subject to discrimination in any program or activity receiving federal financial assistance "solely by reason of her or his disability." 29 U.S.C. § 794(a). Generally, apart from the Rehabilitation Act's limitation to denials of benefits "solely" by reason of disability and its reach to only federally funded – as opposed to "public" – entities, the reach and requirements of the Rehabilitation Act are "precisely the same" as that of the Americans with Disabilities Act. See Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 146 n.6 (2d Cir. 2002). "[U]nless one of those subtle distinctions is pertinent to a particular case, we treat claims under the two statutes identically." Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003). As none of these distinctions are at issue in the instant case, I will look to relevant case law involving both statutes.

"A plaintiff may base her [Rehabilitation Act] discrimination claim on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation." Davis v. Shah, 821 F.3d 231, 260 (2d Cir. 2016). Here, plaintiff alleges that defendant failed to provide reasonable accommodations for her hearing disability.

To establish a prima facie case of discrimination based on an employer's failure to accommodate a disability, "a plaintiff must demonstrate that (1) the plaintiff is a person with a disability under the meaning of the [Rehabilitation Act]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the

6

essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Natofsky v. City of New York, 921 F.3d 337, 352 (2d Cir. 2019) (quotations omitted)

There is no dispute that plaintiff has adequately established the first three elements. Plaintiff is a deaf individual, a disability cognizable under the Rehabilitation Act. See e.g., id. at 352. Further, the City and its agencies like HRA are covered under the statute, as they are recipients of federal funds, and HRA was aware of plaintiff's disability. Finally, there is no disagreement that plaintiff could perform the essential functions of her job with reasonable accommodations. Rather, the dispute is over whether plaintiff has pleaded a plausible claim that defendant "refused" to make the required accommodations within the meaning of the statute.

Plaintiff has asserted in her amended complaint that defendant denied two separate reasonable requests for accommodation, for a videophone and for a software program. I will address each in turn, but I find, for the reasons stated below, that plaintiff has failed to state a claim under the Rehabilitation Act.

### A. Plaintiff's Videophone Request

The first reasonable accommodation at issue is the videophone that plaintiff requested on August 15, 2019. It is undisputed that defendant provided plaintiff with a videophone on October 11, 2019. Therefore, the Court understands plaintiff's failure to accommodate claim to encompass two separate buckets of issues. As plaintiff did receive the requested accommodation, and defendant took steps to repair it, the first set of issues derives from defendant's delay and alleged constructive denial rather than its outright refusal. The second set of issues stems from her allegation that although defendant did provide the videophone, because it is not fully functional, this is effectively an actual denial.

### 1.     Delay

To prevail on her claims that defendant failed to accommodate her request for a videophone in a timely manner, plaintiff must plausibly allege that the delay was motivated by discriminatory intent.  See Blair v. SUNY Univ. at Buffalo, No. 17-cv-1317S, 2020 WL 695870, at *7 (W.D.N.Y. Feb. 11, 2020) (finding that the plaintiff "failed to state the crux of a denial-of-accommodation claim" under the Rehabilitation Act wherein he alleged only a period of delay rather an a refusal and did not include any allegations that the defendant was motivated by discriminatory intent); see also Saunders v. Queensborough Cmty. Coll., No. 13-v-5617, 2015 WL 5655719, at *7 (E.D.N.Y. Sept. 24, 2015) ("To prevail on the claim that Defendants' failure to timely accommodate Plaintiff violated the [Rehabilitation Act], Plaintiff must plead sufficient facts to raise the inference that the failure was motivated by discriminatory intent.") (internal quotations omitted).  Barring allegations of animus, which are not present here, discriminatory intent may be found when the length of the delay is unreasonable.  Blair, 2020 WL 695870, at *7.  Courts have found delays of from three weeks to eighteen months, and those caused by oversight or negligence instead of discriminatory intent, to be reasonable.  Id. (finding that a five-month delay in providing a requested stool "does not suffice to allege discriminatory intent"); see also Choi v. Liberty Mut. Ins. Co., No. 16-cv-5392, 2021 WL 790381, at *8-9 (E.D.N.Y. Feb. 9, 2021) (finding, at summary judgment, that plaintiff "failed to set forth a prima facie case of disability discrimination" based on an eighteen-month delay in providing an accommodation as, "to the extent the delay is attributable to Defendants, the Court is satisfied it was due to bureaucratic inefficiency, and the normal delays that come with coordinating across the many departments of a large company"); Saunders, 2015 WL 5655719, at *7, n.8 (finding that there is "nothing in Plaintiff's Complaint to suggest that the seven-month delay she

8

experienced was motivated by discriminatory intent, bad faith, or obstructionism" rather than "mere bureaucratic incompetence or negligence") (internal quotations omitted).

Plaintiff argues that she does not have to prove discriminatory intent to plead her prima facie case, citing Brooklyn Ctr. For Psychotherapy, Inc. v. Phila. Indem. Ins. Co., 955 F.3d 305, 312 (2d Cir. 2020) ("failure-to-accommodate claims do not require proof of discriminatory intent."). However, Brooklyn Center was not a delay case; it was an outright denial. For the delayed accommodation cases, the courts have found that discriminatory intent is a required element. See, e.g., Kleyman v. SUNY Downstate Med. Ctr., No. 18-cv-3137, 2020 WL 5645218, at *8, *20 (E.D.N.Y. Sept. 21, 2020) (notwithstanding Brooklyn Center, where a plaintiff is alleging delayed accommodation rather than outright refusal, "courts in the Second Circuit have consistently held that a plaintiff is required to provide evidence that the delay was motivated by the employer's discriminatory intent, as opposed to mere negligence.") (internal citations omitted).

Because, as I explain below, plaintiff has failed to allege facts suggesting the existence of discriminatory intent, her failure-to-accommodate claims regarding delay are dismissed.

    **a.**  **Initial Receipt of Videophone**

Plaintiff initially received her videophone on October 11, 2019, after making an official request in August 2019, and an unofficial request in June 2019. Plaintiff was not yet employed by defendant when she made the unofficial request, so the August 15, 2019 request is the operative date in determining whether the length of the delay suggests discriminatory intent. Without more, an allegation of a delay of less than two months in receiving an accommodation is not cognizable as a claim for a failure to accommodate. See, e.g., Saunders, 2015 WL 5655719, at *7.

### b. Repair of Videophone

Additionally, plaintiff does not plead facts suggesting that any delays in making repairs to her videophone were motivated by discriminatory intent.

As an initial matter, she insists that defendant was on notice that a cradle point was necessary because it had needed to install one for another deaf employee's videophone previously. This is not enough to plausibly allege discriminatory intent. If anything, it merely suggests negligence, "bureaucratic inefficiency, and the normal delays that come with coordinating across the many departments of a large company." Choi, 2021 WL 790381, at *9. Moreover, defendant did install a cradle point within a matter of weeks.

Plaintiff's other allegations also show that throughout late 2019 and early 2020, defendant was generally responsive to her various requests to repair or troubleshoot issues. Although plaintiff may not have believed defendant was solving these issues swiftly or competently enough, it made numerous and repeated attempts to assist plaintiff, including by installing two different cradle points, moving the device at plaintiff's request, and working with outside contractors to make relevant repairs. In fact, all issues with her videophone, aside from occasional "freezing and blurry" video quality, which required plaintiff to "sign very slowly" over one three-day period in March 2020, were resolved by February 2020.

Admittedly, there was a real breakdown in communications concerning fixing the lingering issue of occasional poor video quality. Defendant appears to not have responded to some emails from her and Sorenson sent in the days and month following March 13, 2020. However, some additional historical context may prove important here. On March 13, 2020, the President of the United States declared a state of national emergency, and Mayor Bill DeBlasio issued a city-wide state of emergency, both due to the impending coronavirus pandemic. By

March 17, 2020, Governor Cuomo had issued Executive Order 202.4, mandating that most local governmental employees work from home.

It is not surprising that defendant was unable to respond to plaintiff's needs during the height of the pandemic. As she alleges, she was in fact working during that period, at least part of the time, remotely, and she was unlikely to be using her videophone at all, or at least less frequently. It thus makes sense that her requests to troubleshoot issues for a device she was using infrequently were not a top priority for defendant. Defendant serves an underprivileged clientele by providing essential benefits like food assistance, homeless shelters, and emergency rental assistance. There can be little doubt that technological issues must be accommodated to provide those services, and its resources must be committed there. It is thus not unreasonable for plaintiff to experience delay in getting the accommodation necessary to do her job during the pandemic.

Importantly, during this period, plaintiff alleges that her device's video quality was "good" and only "sometimes . . . slow", an issue that she has resolved in the past by signing more slowly. Therefore, as her device was working, any delay in repair at this juncture points to, if not exactly "bureaucratic incompetence," prudent and understandable attempts at prioritization during an unprecedented time. Under the circumstances, any delay in repairing a still-functional videophone the employee was admittedly using infrequently, if at all, cannot be said to be unreasonable. Moreover, the length of delay alone cannot plausibly show any type of discriminatory intent. And when plaintiff finally returned to working full-time in September 2021, she acknowledges that her videophone was working properly.

### 2. Refusal to Repair Videophone

Plaintiff additionally alleges that as defendant never provided her a videophone that was fully functional at all times, this amounts to a refusal to accommodate rather than a mere delay in

11

doing so. If so, this would not require plaintiff to plead discriminatory intent. See Brooklyn Ctr. For Psychotherapy, Inc., 955 F.3d at 312. However, plaintiff acknowledges that her videophone was working properly during numerous periods, including when she resumed going into the office in September 2021. She has not plausibly alleged that defendant has actually refused to accommodate her.

The only remaining issue she identifies concerns occasional poor video quality, namely that other people's videophones sometimes freeze "from time to time" when they are talking to her. When this issue arose at times in 2020, she acknowledged that it could be resolved if she signed more slowly. It may be inconvenient, but her allegations show that she is indeed able to communicate effectively even with the remaining issues.

Although plaintiff may want a videophone that never freezes (the Court would like that too), "employers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." Noll v. Int'l Bus. Machines Corp., 787 F.3d 89, 95 (2d Cir. 2015). "[A]ll that is required is that the employer provide an effective accommodation." Hazelwood v. Highland Hosp., 763 F. App'x 60, 62 (2d Cir. 2019).

**B.  Software Program Installation**

Plaintiff also asserts that defendant failed to accommodate her by refusing to install a particular software program. On January 7, 2020, plaintiff requested installation of a software program on her work laptop for a home visit with a Korean-speaking client the following day. When defendant failed to do so in time, plaintiff had to cancel the home visit.

This too is inadequate to state a plausible claim for a failure to accommodate under the Rehabilitation Act. Even construing the allegations in the complaint as favorably to her as possible, defendant's failure to install a software program with less than a day's notice cannot amount to a failure to accommodate her. There are myriad reasons why defendant may not have

12

been able to install this software the same day that would amount to, at most, negligence. Moreover, plaintiff does not allege that defendant never installed, or offered to install, this software on a more reasonable schedule. Without a clear refusal to accommodate, or a long delay that plausibly supports an inference of discriminatory intent, plaintiff has not met her burden in pleading facts adequate to state a claim.

### III.     Request to Amend

In opposing defendant's motion to dismiss, plaintiff briefly suggests that defendant is discriminating against her based on "newly developed facts" that were not plead in her Amended Complaint. As these facts are not properly before me, I decline to consider them in determining the motion to dismiss. See, e.g., Uddoh v. United Healthcare, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) ("A plaintiff . . . is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss . . .").

Plaintiff also requests leave to amend her complaint based on these new allegations. The allegation at issue concerns her request for an iPad, submitted on October 15, 2021, for use during "field visits with clients." As of the date of filing her opposition on November 23, 2021, plaintiff had not yet received a response. She has not filed any supplemental letters alleging additional facts in the interim.

As an initial matter, because she seeks to add claims based on events that occurred after the filing of her complaint, plaintiff's request is more properly understood as one for leave to supplement under Federal Rules of Civil Procedure 15(d). This rule provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).

13

As "Rule 15(d) motions are evaluated under the same standards as Rule 15(a) motions," Milligan v. Citibank, N.A., No. 00-cv-2793, 2001 WL 1135943, at *9 (S.D.N.Y. Sept. 26, 2001), "[d]istrict courts in this circuit have construed motions made under Rule 15(a), but which should have been made under Rule 15(d) (or vice versa), as if they had been brought under the correct rule." Wertzberger v. Shapiro, DiCaro & Barak LLC, No. 19-cv-4272, 2021 WL 327619 (E.D.N.Y. Feb. 1, 2021). Although the language of Rule 15(d) is "plainly permissive" and leave to supplement should generally be "freely given," the Second Circuit has held that leave may be denied because of futility, among other reasons. Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n, 898 F.3d 243, 256 (2d Cir. 2018). Additionally, for Rule 15(d) motions specifically, the "supplemental facts [must] connect it to the original pleading." Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995).

Plaintiff's newly proposed claim clearly does not stem from the same transaction or occurrence as those pleaded in her original complaint. However, I cannot find it to be so entirely unconnected to the original pleading such that I would deny supplementation on this ground. See In re Elysium Health-ChromaDex Litig., No. 17-cv-7394, 2021 WL 194994, at *4 (S.D.N.Y. Jan. 19, 2021) (noting that on a FRCP 15(d) motion to supplement, "the threshold consideration . . . is whether the supplemental facts connect the supplemental pleading to the original pleading."); see also 6A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1510 (3d ed. 2020) (observing that a motion under Rule 15(d) can be denied when "the claim or defense asserted in the supplemental pleading [bears] little or no relationship to the original pleading."). Indeed, her original August 15, 2019 accommodation request, detailed in her complaint, listed a tablet as a possible alternative accommodation to accessing VRI on her phone.

Instead, plaintiff's request to supplement must be denied because it is futile. A supplement to a pleading "is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Business Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002).

Based on the allegations provided by plaintiff, supplementation would be futile. That defendant did not respond to plaintiff's accommodation request for an iPad within a month cannot form the basis of a violation of the Rehabilitation Act without facts suggesting discriminatory intent or an outright refusal. This remains the case even if defendant had still not responded by this point. See Saunders, 2015 WL 5655719, at *19. Further, plaintiff fails to provide proffer any facts suggesting that this request is, in fact, reasonable. Her earlier accommodation request from August 15, 2019 made clear that she could use either a phone *or* a tablet for the same purposes. She does not explain why an iPad specifically is necessary, or why her phone is insufficient.

Plaintiff has not included any proposed supplemental pleading or otherwise indicated what else she might allege. Further, she already has been permitted to file one amended pleading. In the absence of any identification of how supplementation would improve upon her amended complaint, leave to supplement must be denied as futile.

## IV.    State and City Law Claims

Having dismissed the federal claims, I decline to exercise supplemental jurisdiction over the remaining state and city law claims. See 28 U.S.C. § 1367(c). Although plaintiff points out that I may properly retain supplemental jurisdiction, Cohen v. Postal Holdings, LLC, 873 F.3d 394, 399 (2d Cir. 2017), in this instance, doing so would not be appropriate. See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (noting that "in the usual case in which all federal-law claims are eliminated before trial," courts should decline jurisdiction over

the non-federal claims) (quotations omitted).  This case is at the early stages and the non-federal claims may well raise different issues and apply different standards.

## CONCLUSION

Defendant's motion to dismiss the complaint is granted.  Plaintiff's claims under the Rehabilitation Act are dismissed with prejudice and her State and City law claims are dismissed without prejudice.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       January 13, 2022